Thomas J. Barton (TB4751)
Patricia A. Cullen, (PC5201)
**DRINKER BIDDLE & REATH LLP**
140 Broadway, 39th Floor
New York, New York 10005
(212) 248-3140
Attorneys for Defendant Urban Outfitters, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRACEY WRIGHT, | CASE NO. 2006 Civ. 13389 (RJH) |
| Plaintiff, | |
| vs. | **DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1** |
| URBAN OUTFITTERS, INC., | |
| Defendant. | |

Defendant Urban Outfitters, Inc. submits this Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 in Support of its Motion for Summary Judgment.

1.  Defendant Urban Outfitters, Inc. ("Urban Outfitters" or defendant) is a specialty retailer and wholesaler that offers a variety of apparel and home merchandise through department stores and specialty stores, and its own retail stores, websites and catalogs. The company's corporate headquarters is in Philadelphia, and stores are located throughout the United States and in Canada and Europe. Certification of Glen T. Senk ("Senk Cert.") ¶ 2.

2.  Free People, the division that employed plaintiff Tracey Wright ("plaintiff" or "Ms. Wright"), began as Urban Outfitters' wholesale division, selling to specialty stores, department stores, and catalogs. Free People has evolved into a stand-alone brand and currently markets its clothing through its own retail stores, catalogs and website, in addition to high-end department and specialty stores. Id. at ¶ 3.

3.      During the mid-1980s, Ms. Wright held a sales position at an Urban Outfitters retail store, from which she voluntarily resigned. Certification of Patricia A. Cullen ("Cullen Cert.") Exh. A ("Wright Dep.") at 28:11-29:16.

4.      From 1989 to 1991, Ms. Wright was employed in the New York showroom of the wholesale division as an office manager. Wright Dep. at 32:20-22.

5.      Ms. Wright resigned from her position as office manager because she believed there was no room for her to move into sales. Wright Dep. at 51:1-52:14.

6.      Ms. Wright reapplied to Urban Outfitters in 1996 and in June of that year was hired as a sales assistant at Free People's New York City showroom, where she was one of approximately eleven employees. Ms. Wright was hired by Terrie Kane, the National Sales Manager, and reported to Ms. Kane. Wright Dep. at 61:20-64:16.

7.      Ms. Wright's initial duties as sales assistant were to send sample clothing to sales representatives in the field, hang and steam the samples kept in the showroom, show the product line to customers if sales representatives were not available, and prepare reports of hot selling items and items available for preorder. She was also responsible for care of the samples in the showroom, which sometimes involved arranging for cleaning or alterations. Wright Dep. at 84:5-85:1, 105:23-106:25.

8.      In 1998, after another employee performing public relations duties resigned, Ms. Wright applied for and was given the public relations position, assuming those duties in addition to her sales assistant duties. Wright Dep. at 86:21-89:10.

9.      Ms. Wright's public relations activities involved dealing with the media, getting publications to cover company events and activities such as store openings, and encouraging fashion magazines serving the company's target markets to feature Free People clothing in their

pictorial fashion layouts. She sometimes provided pictures, information and gifts to media representatives. She also worked with stylists for actors and artists who wanted to wear Free People clothing on television, in movies, and during stage performances. Wright Dep. at 90:3-91:22.

10. Ms. Wright complained to Ms. Kane that she was required to answer the door. Wright Dep. at 97:12-23.

11. Ms. Wright continued reporting to Ms. Kane, performing her public relations and sales sample duties, until Ms. Kane resigned in 2002. Wright Dep. at 92:5-23.

12. Kristine Meehan was hired to replace Ms. Kane in the New York showroom. Many of the employees who had worked with Ms. Kane were not very welcoming to Ms. Meehan. Cullen Cert. Exh. B ("Meehan Dep.") at 55:13-18.

13. Some of the showroom employees quit immediately when Ms. Meehan was hired. Meehan Dep. at 37:4-38:14.

14. Ms. Meehan also hired new employees, some of whom had worked with her at her prior place of employment. Id. at 24:22-25:11.

15. Tension developed in the showroom between the old employees who had worked with Ms. Kane and the new employees hired by Ms. Meehan. Cullen Cert. Exh. C ("Hanshaw Dep.") at 128:17-131:19; Affidavit of Beth Lavine ¶ 13.

16. Ms. Meehan's mission upon taking over at Free People was to reposition the brand to appeal to a customer in the 26 to 32 age group, as distinguished from the teen or junior market that had previously been Free People's target audience. Meehan Dep. at 54:21-58:21.

17. For Ms. Wright, this change in focus meant trying to develop connections with magazines like Vogue and Elle, which appealed to an older customer, rather than the magazines

she had been previously working with like Seventeen and Cosmo Girl. Wright Dep. at 327:8-329:1.

18. Ms. Wright's resistance to supporting the new strategy and giving up her work with teen magazines was an ongoing source of frustration for Ms. Meehan. Wright Dep. at 327:8-329:1, Meehan Dep. at 54:21-58:21; 144:13-179:32; Hanshaw Dep. at 90:19-24; Cullen Cert. Exhs. A, B, C, N, O, P, R, HH.

19. With Ms. Meehan as her supervisor, Ms. Wright continued to perform both her samples duties and her public relations duties. Wright Dep. at 100:8-15.

20. In March 2004, Assistant Design Director Doub Hanshaw suggested to management that public relations should be more closely aligned with the design side of the business rather than the sales side. Hanshaw Dep. at 17:6-23.

21. Senior management decided to follow that suggestion and reorganized the public relations function. The result of that reorganization was that Ms. Wright began reporting to Ms. Hanshaw for her public relations duties but continued to report to Ms. Meehan for her sales samples duties. Hanshaw Dep. at 19:3-24:16; 40:25-41:2.

22. At first Ms. Wright was unhappy to learn that she would be reporting to Ms. Hanshaw. Hanshaw Dep. at 180:11-13; Wright Dep. at 180:8-13.

23. Ms. Hanshaw assured Ms. Wright that her role was not to be a "boss" but rather to collaborate with Ms. Wright and to provide her with tools such as photographs and "image books" that would help her perform the public relations function. Hanshaw Dep. at 18:8-19:1.

24. Ms. Wright's pay was not reduced when Ms. Hanshaw became her supervisor, and Ms. Hanshaw did not assume any of Ms. Wright's duties. Wright Dep. at 324:1-10; 354:16-19.

25. Ms. Wright confided in Ms. Hanshaw about issues she was having with Ms. Meehan. Cullen Cert. Exhs. S, U, W, X.

26. On September 10, 2004, Ms. Wright complained to Ms. Hanshaw that she did not want to have to ask Ms. Meehan for days off, and that Ms. Meehan only wanted her around "to answer the door and help with the phones." Cullen Cert. Exh. S.

27. On September 29, 2004, Ms. Wright complained to Ms. Hanshaw about her assigned duties, which included answering the door and helping with the phones. Id. Exh. U.

28. On October 19, 2004, Ms. Wright complained that Ms. Meehan had asked her to count the hangers in the showroom. Id. Exh. T.

29. On February 24, 2005, Ms. Wright complained that she had asked Ms. Meehan a question but Ms. Meehan ignored her. Id. Exh. X.

30. On March 2, 2005, plaintiff telephoned Renee Hollinger in Human Resources to complain about Ms. Meehan. She told Ms. Hollinger that Ms. Meehan ignored her, treated her badly, had called her "it," and sometimes did not speak to her. Affidavit of Renee Hollinger ¶¶ 6-7.

31. After speaking to Ms. Hollinger, Ms. Wright arranged for a private meeting with Ms. Meehan to discuss their relationship. Although the meeting was one of the options suggested by Ms. Hollinger, according to Ms. Wright's testimony, she was in favor of trying to talk things out with Ms. Meehan. Wright Dep. at 186:6-187:19; Hollinger Aff. ¶ 11.

32. After they had that meeting, both Ms. Wright and Ms. Meehan believed that the meeting had been productive and helped to improve their communication with one another. Meehan Dep. at 218:22-220:10; Hollinger Aff. ¶ 13.

33. In Ms. Hanshaw's view, the best way to solve Ms. Wright's issues with Ms. Meehan was to relieve her of any responsibility for samples and have her focus on public relations full time. Hanshaw Dep. at 111:20-115:19.

34. For several months Ms. Wright had been asking to be relieved of the samples duties. Wright Dep. at 89:15-17; 114:18-118:15.

35. In her self-assessment for her 2004 review, Ms. Wright stated that she wanted to be relieved of the samples duties. Cullen Cert. Exhs. Q, CC, EE.

36. Effective March 2005, Ms. Wright was relieved of the samples job and no longer reported to Ms. Meehan. Cullen Cert. Exh. EE.

37. In March 2005 Carrie Yotter, another designer, was assigned to replace Ms. Hanshaw as the link between public relations and design, and as of March 2005, Ms. Wright reported to Ms. Yotter. The only task to Ms. Yotter took over from Ms. Wright was drafting press releases, a small component on which Ms. Wright had spent only 5 or 6 days per year. Wright Dep. at 215:7-216:20.

38. Ms. Wright did not experience a reduction in pay when Ms. Yotter became her supervisor. Wright Dep. at 354:16-19.

39. As Free People developed into a stand-alone brand, the company explored new methods of marketing the brand directly to customers. Free People opened its first retail store in November 2002 and a second one in December 2004. Based upon the success of those stores, three more were opened in 2005. Senk Cert. ¶¶ 11, 12.

40. Free People also experimented with its own catalog, issuing the first one in Spring 2005. Senk Cert. ¶ 15.

41. The company also developed a website through which customers could order merchandise directly from the company. Id. at ¶ 15.

42. In the Summer of 2005, the company determined that using the catalog, retail stores, and website to market Free People clothing directly to buyers was a much more successful marketing strategy than using magazines and famous people for publicity. Id. at ¶ 16.

43. As a result of that change in strategy, the Company eliminated the public relations activities performed by Ms. Wright, and that position was eliminated effective August 31, 2005. Id. at ¶ 17.

44. The decision to change marketing strategy and eliminate Ms. Wright's position were made by Glen Senk. Id. at ¶ 17.

45. Ms. Wright was not replaced and to this day there is no Free People employee performing Ms. Wright's former public relations duties. Id. at ¶¶ 17, 18.

46. Currently, Free People clothing is marketed directly to customers through the retail website, semi-annual catalogs, and a total of fifteen Free People retail stores. Id. at ¶ 3.

47. Fifteen additional retail stores are planned to be opened in fiscal 2009. Id. at ¶ 12.

48. Ms. Wright received the Urban Outfitters Employee Handbook and the Equal Employment Opportunity Policy. Wright Dep. at 77:22-78:3.

49. Ms. Wright was aware of the internal procedures for reporting a complaint of discrimination or harassment. Wright Dep. at 80:16-82:15.

50. Ms. Wright never stated to Renee Hollinger or anyone else in Human Resources that she believed she was being discriminated because of her race. Hollinger Aff. ¶ 8; Wright Dep. at 175:7-178:4; 463:14-466:10.

51. Ms. Wright never stated to the Glen Senk that she believed she was being discriminated against because of her race. Wright Dep. at 335:11-13.

52. Ms. Wright never complained to Doub Hanshaw that she believed she was being discriminated against because of her race. Hanshaw Dep. 90:8-11; 172:14-16; Cullen Cert. Exhs. S, T, U.

53. Ms. Wright never complained to Dick Hayne that she believed she was being discriminated against because of her race. Wright Dep. at 81:22-82:5.

DRINKER BIDDLE & REATH LLP<br>
Attorneys for Defendant<br>
Urban Outfitters, Inc.

By:     s/ Patricia A. Cullen
          Patricia A. Cullen

Dated: July 15, 2008